IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 8:05CR261 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND |
| JAMAL WRIGHT, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This case is before the court on the defendant Jamal Wright's Motion to Suppress Evidence (#15). The motion was heard on October 4, 2005. The Transcript of the proceeding (#22) was filed on October 20, 2005, and the motion was deemed submitted.

Wright moves the court for an order suppressing all evidence obtained as a result of the allegedly unlawful search and seizure of his person on April 22, 2005. Specifically, Wright alleges the seizure resulted from a nonconsensual encounter wherein a reasonable person would not feel free to leave or refuse the officer's request for questioning, in violation of his Fourth Amendment rights.

**FACTUAL BACKGROUND**

Joseph Wherry testified that on April 15, 2005 he was employed as an officer with the Omaha Police Department when he received a dispatch concerning a robbery at Joe's Fashion, 4521 North 30th Street (8:4-12). Wherry testified he reviewed a copy of the transcript (Ex. 1) of his contacts with dispatch and, with minor corrections, the transcript is correct (10:11-22).

Wherry testified that at approximately 3:42 p.m. he received the initial information about the robbery from dispatch and approximately three minutes later at 3:45 he contacted the defendant, Jamal Wright, (Ex. 2, Photograph of Jamal Wright, D.O.B. 12/18/79) at 28th and Meredith about two blocks from the robbery location (10:23-11:25).

Wherry testified that the initial transmission described the suspect as an older black male wearing a black outfit and armed with a knife (12:10-16). When he saw Wright, Wright was wearing a black jacket and walking away from him toward the east. Because Wherry considered Wright to be an individual matching the description (12:17-13:2), he exited his cruiser, approached Wright, and asked if he had any weapons. As Wright started to reach his hands into his front pockets, Wherry told him to take his hands out of his pockets. Wherry grabbed Wright's left arm as his partner grabbed Wright's right arm (14:1-8; 14:17-15:4).

Wherry testified that he grabbed Wright for safety reasons as the person who committed the robbery had displayed a knife (14:9-18). After grabbing Wright, Wherry patted Wright's front pockets to see if he had a weapon, and as he reached around to pat Wright's left back pocket, Wherry felt what he believed to be a handgun. Wherry told his partner to handcuff Wright because it appeared Wright had a handgun (15:20-16:9). As Wherry lifted Wright's jacket, he observed a handgun sticking out of Wright's back pocket (16:23-17:7).

On cross-examination Wherry testified that the area where Wright was stopped is a residential district and that he stopped Wright after receiving information from dispatch that the robber was a black older party with a black outfit who showed a knife and took a pair of shoes before leaving the store on foot heading in a westerly direction (20:13-21:11). He admitted the stop of Wright occurred approximately two blocks east of the store (20:13-16). Wherry stated that while he approached Wright from the rear, that as Wherry exited his cruiser Wright started to turn around towards him (21:19-22).

## LEGAL ANALYSIS

Both parties cite *Terry*.[1] Wright argues that Officer Wherry lacked reasonable suspicion to conduct a *Terry* stop[2] because he did not fit the description of the robbery suspect. The government argues the *Terry* stop was appropriate, as the defendant generally matched the description of the armed robber.

**A. The *Terry* stop.**

Unquestionably the defendant was entitled to the protection of the Fourth Amendment as he walked down the street. *See, Terry,* 392 U.S. at 9. As in *Terry,* "[t]he question is whether in all the circumstances of this on-the-street encounter, his right to personal security was violated by an unreasonable search and seizure," *Id.,*

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

[2] Wright admits in his reply brief (#23, pp.1-2) that the government could have engaged him in a consensual encounter, however, both parties admit that the stop of Wright was not a consensual stop (30:14-22).

or, in other words, whether it was unreasonable for the officer to seize the defendant and subject him to a limited search for weapons without probable cause for an arrest.  *See Id.* at 15.

In determining whether the seizure and search were "unreasonable," the court must conduct a dual inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 18-19.  The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

As the *Terry* court observed, "certainly it would be unreasonable to require the police officers to take unreasonable risk in the performance of their duties." *Terry v. Ohio*, 392 U.S. at 23.  "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id.* at 24.  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27.

In determining whether Officer Wherry's action was justified at its inception, I note that the level of suspicion required for a *Terry* stop is far less demanding than

that for probable cause. *See United States v. Gonzales,* 220 F.3d 922, 925 (8th Cir. 2000). "A reasonable suspicion may be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality."

On April 22, 2005 Officer Wherry was looking for an older black man wearing a black outfit who showed a knife, robbed a store, and left westbound on foot less than three minutes earlier. On the day in question, the defendant, a younger black male wearing a black coat, was walking eastbound.

The question before the court is whether given the specific and articulable facts relied on by Officer Wherry, coupled with the totality of the circumstances giving proper deference to police officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them," Officer Wherry's stop of Wright was reasonable. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In other words, did Officer Wherry's observations, under the totality of the circumstances, rise to the level of reasonable suspicion. I find they did not. The factual discrepancies as to age, direction of travel, and clothing, did not match. In reality, Wright was a young black male wearing a black jacket who happened to be present within two blocks of a robbery. The stop of Wright under the circumstances set out in this case could only be valid if I hold that the stop of all adult black males wearing black jackets within two blocks of the robbery, was appropriate. I cannot reach such a conclusion.

## RECOMMENDATION

I find Officer Wherry did not have reasonable suspicion to detain Wright pursuant to *Terry v. Ohio*, and for these reasons,

**IT IS RECOMMENDED** that defendant's Motion to Suppress (#15) be granted. Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) calendar days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be ***reviewed de novo*** and a different disposition made.

**DATED November 18, 2005.**

                                    **BY THE COURT:**

                                    **s/ F.A. Gossett**
                                    **United States Magistrate Judge**